## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| LETHA GARDNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:08-CV-04030-NKL |
| | ) | |
| HARTFORD LIFE AND ACCIDENT | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Letha Gardner ("Gardner") filed this putative class action against

Defendant Hartford Life and Accident Insurance Company ("Hartford") for payment of

benefits under certain accidental death and dismemberment insurance policies issued by

Hartford, including that issued to her late husband ("Mr. Gardner"). Pending before the

Court are Hartford's Motion for Summary Judgment [Doc. # 23] and Hartford's Motion to

Strike Class Allegations [Doc. # 25]. For the following reasons, the Court denies both

motions.

### I.    Factual Background

In June 2007, Mr. Gardner died after the car he was driving collided with a tree in

Osage County, Missouri. The Missouri State Highway Patrol's accident report states that

the collision occurred when Mr. Gardner was traveling too fast for conditions. His car

1

traveled off the side of the road, and he over-corrected his steering. The accident report does not mention alcohol. The Missouri State Highway Patrol toxicology report lists Mr. Gardner's blood alcohol level at the time of death as 0.244%. At the time of Mr. Gardner's death, a person operating a motor vehicle in Missouri with a blood alcohol level of 0.08% or more was "driving with excessive blood alcohol content." Mo. Rev. Stat. § 577.012.

Mr. Gardner was insured under an accidental death and dismemberment insurance policy issued by Hartford. Attached and incorporated into the Complaint is the applicable "Certificate of Insurance" ("Certificate").[1] The Certificate lists Mr. Gardner as a person covered by the policy. The sum payable in the event of his accidental death is $76,000, but only if his death results "directly from accident and independently of all other causes . . . ." *Id.* The Certificate does not define "accident," nor does Hartford's proffered policy document. Under "Exclusions," the Certificate states:

> The Policy does not cover any loss resulting from: . . . [i]njury sustained as a result of being legally intoxicated from the use of alcohol.

*Id.* ("Alcohol Exclusion").

_____

[1] The Certificate states an effective date of coverage of October 1, 2005, and references a policy number – ADD-10900. There is some dispute as to which documents, in addition to the Certificate, constitute Mr. Gardner's policy. Hartford includes with its motion for summary judgment a document which Hartford states is policy number ADD-10900. That document includes language identical to that of the Certificate in relevant part. Because there is no difference between the relevant policy language and the certificate which Plaintiff attached to her complaint, the Court need not resolve at this stage the authenticity of Hartford's policy ADD-10900.

2

After Hartford refused to pay Letha Gardner accidental death benefits following Mr. Gardner's death, she filed this action. Her Complaint alleges claims for declaratory judgment and breach of contract. The Complaint indicates that the Alcohol Exclusion creates an ambiguity which must be resolved in favor of coverage. She also claims that Hartford has applied the Alcohol Exclusion to deny coverage in all cases seeking benefits for injuries or death where the insured was intoxicated.

The Complaint purports to bring these claims on behalf of a "class of persons who have sought but been denied coverage by defendant for injury or death where the insured person had a blood alcohol content above the applicable state's legal limit at the time of accidental death or injury." (Compl. at ¶ 20.) Beyond that statement, the Complaint's class allegations essentially mimic the requirements of Rule 23 of the Federal Rules of Civil Procedure for class actions.

## II. Discussion

### A. Motion for Summary Judgment

Hartford moves for summary judgment, asserting that Mr. Gardner's death was not an "accident" within the meaning of the relevant policy language and, therefore, his death did not trigger the payment of benefits. The parties agree that Missouri law controls the issues in this case.

In Missouri, where "an insurance policy is unambiguous, it will be enforced as written absent a statute or public policy requiring coverage." *American Family Mut. Ins. Co. of Am. v. Turner*, 824 S.W.2d 19, 21 (Mo. Ct. App. 1991). The Court will give the

3

language of an insurance policy its plain meaning – "the meaning that would ordinarily be understood by a layperson who bought the policy." *Haulers Ins. Co. v. Wyatt*, 170 S.W.3d 541, 545-46 (Mo. Ct. App. 2005) (citation omitted).

"An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the" policy. *American Family*, 824 S.W.2d at 21  (citation omitted). Ambiguity exists in an insurance policy if its language is reasonably and fairly open to different constructions. *See Krombach v. Mayflower Ins. Co., Ltd.*, 785 S.W.2d 728, 731 (Mo. Ct. App. 1990). An "ambiguous phrase is not considered in isolation, but by reading the policy as a whole with reference to the associated words." *American Std. Ins. Co. of Wisc. v. May*, 972 S.W.2d 595, 602 (Mo. App. Ct. 1998) (citation omitted). "As such, one must consider the language at issue in the context of the entire policy." *Id.*

Because an insurance policy is designed to furnish protection, an ambiguous policy will be interpreted to afford coverage and not to defeat coverage. *Krombach*, 785 S.W.2d at 731. That is, ambiguous provisions of insurance policies are construed against the insurers. *American Std.*, 972 S.W.2d at 602.

The term "accident" in Mr. Gardner's policy is subject to various interpretations and is, thus, ambiguous. According to Hartford, Mr. Gardner's death was not an "accident" because it occurred when he was driving with a blood alcohol level in excess of Missouri's legal limit.[2] In support of its argument, Hartford cites to *Cappo v. Allstate*

---

[2] In its motion for summary judgment, Hartford does not raise the Alcohol Exclusion as a basis for denying Gardner's claim.

4

*Life Ins. Co.*, 809 S.W.2d 131 (Mo. App. Ct. 1991), which finds it "well settled under Missouri law that death from bodily injury is accidental only if it is unforeseeable and unexpected." *Id.* at 134 (citations, all to Missouri appellate decisions, omitted) (holding that insured's death while meeting with known murderers did not fall within policy's meaning of "accidental" where the evidence established that the insured foresaw and expected his own murder). Hartford contends that a death which occurs when driving while intoxicated is foreseeable.

The few cases addressing the issue are divided on whether Missouri law mandates that all deaths which occur when the decedent is driving are not "accidents." In *Gaddy v. Hartford Life Ins. Co.*, 218 F. Supp. 2d 1123 (E.D. Mo. 2002), the court predicted that the Missouri Supreme Court would hold that an insured's death was a foreseeable result of driving drunk and, thus, not "accidental." *Id.* at 1129. Based on statistical evidence, another case considering the same issue under Missouri law rejected the contention that death is a natural and probable result of driving while intoxicated. *Collins v. Minnesota Life Ins. Co.*, No. 04-4241-CV-C-WAK, 2006 WL 13162 at * 2-3 (W.D. Mo. Jan. 3, 2006).

Addressing one of Hartford's own accidental death and dismemberment policies, the Eighth Circuit confirmed that defining "accident" as an "unforeseeable" event perpetuates the term's ambiguity. *See King v. Hartford Life & Acc. Ins. Co.*, 414 F.3d 994 (8th Cir. 2005) (en banc). In reviewing a plan administrator's decision under the deferential standards of the Employee Retirement Income Security Act (ERISA) – as

5

opposed to Missouri insurance contract law – the *King* court considered Hartford's

argument that it did not abuse its discretion in denying accidental death benefits. *Id.* at

1001-02. In *King* – as it does here – Hartford asserted that the insured was driving while

intoxicated at the time of the automobile collision which caused his death and, thus, his

death was not an "accident" within the meaning of the policy. *Id.* The Eighth Circuit

explained:

> This inquiry would present a debatable question. Some courts have accepted as
> reasonable an interpretation that excludes "reasonably foreseeable" injuries from
> the scope of "accidental" injuries, and these decisions lend support to Hartford's
> decision. If "accidental" means "unexpected," and if "reasonably foreseeable" is a
> reasonable synonym for "expected," then one might well conclude that the
> proffered standard passes muster under the deferential ERISA standard of review.
> On the other hand, a "reasonably foreseeable" standard is quite broad; if all
> "reasonably foreseeable" injuries are excluded from coverage, then the definition
> of accident may frustrate the legitimate expectations of plan participants, for
> insurance presumably is acquired to protect against injuries that are in some sense
> foreseeable.

*Id.* (internal citations omitted).[3] Thus, defining "accident" as an "unforeseeable"

occurrence – as Hartford has here – renders the term subject to varying interpretations.

Cases from courts outside Missouri have reached varying conclusions on whether

a death which occurs when driving while intoxicated is an "accident." *See, e.g., Cozzie v.*

*Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1108 (7th Cir. 1998) (applying an arbitrary

and capricious – "downright unreasonable" – standard to affirm an ERISA administrator's

---

[3] The *King* court did not resolve the question of whether death is a foreseeable – and thus not
"accidental" – result of driving while intoxicated; the *King* court remanded the case to the plan
administrator for further consideration based on inconsistencies between Hartford's litigation and
administrative positions. *King*, 414 F.3d at 1002.

finding that death was not an "accident" when decedent drove while intoxicated); *American Family Life Assur. Co. v. Bilyeu*, 921 F.2d 87, 89 (6th Cir. 1990) (holding, under Kentucky law, that insured's death when driving while intoxicated was "accident" within meaning of accidental death policy even though accident was foreseeable result of intoxication). While affirming the plan administrator's decision as not "downright unreasonable" in *Cozzie,* the Seventh Circuit stated: "Nevertheless, we caution that plan drafters would be well advised to demonstrate significant circumspection in attempting to require these general plan terms to bear too much weight." *Cozzie*, 140 F.3d at 1111.

Thus, case law demonstrates that the general term "accident" as used in Mr. Gardner's policy is subject to multiple interpretations; in other words, the term is ambiguous. Most of the above-cited cases, including Hartford's own *King* decision, were decided before the effective date of Mr. Gardner's policy. Hartford was on actual notice of the ambiguity and could have defined the term "accident" so as not to include automobile collisions occurring when the insured is driving while intoxicated. Given the ambiguity of the undefined "accident" term, the Court cannot find that Mr. Gardner's death is not covered by the policy. Accordingly, Hartford's motion for summary judgment is denied.

### B.    Motion to Strike Class Allegations

In its Motion to Strike Class Allegations, Hartford argues that the Court should strike Gardner's class allegations from the Complaint. Hartford brings its motion to strike pursuant to Rules 12(c), 12(b)(6), and "23(d)(4)" of the Federal Rules of Civil Procedure.

7

Hartford's motion does not set forth the framework under which the Court should consider such a motion. Motions pursuant to Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed"; because Hartford has already filed its responsive pleading by way of its Answer, Hartford may not use Rule 12(b)(6) as a basis for its motion to strike. The Federal Rules of Civil Procedure do not contain a rule designated as "23(d)(4)"; while Rule 23 does set forth the analysis for determining whether class certification is appropriate, a review of Rule 23 and Hartford's motion to strike does not indicate another section of that rule which would serve as a basis for Hartford's motion to strike. As such, the Court considers Hartford's motion to strike under the standards applicable to the one remaining rule it cited, Rule 12(c) pertaining to motions for judgment on the pleadings.[4]

When considering motions for judgment on the pleadings, the Court accepts as true all facts pleaded by the nonmoving party and grants all reasonable inferences from the pleadings in favor of the non-movant. *See Syverson v. Firepond, Inc.*, 383 F.3d 745, 749 (8th Cir.2004) (citation omitted). " Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Id.* (*citing Faibisch v. University of Minn.*, 304 F.3d 797, 803 (8th Cir.2002)). The Court considers Rule 12(c) motions under essentially the same

---

[4] The Eighth Circuit has clarified that "striking a party's pleadings is an extreme measure, and, as a result, we have . . . held that motions to strike . . . are viewed with disfavor and are infrequently granted." *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059 (8th Cir. 2000) (citation and internal quotation punctuation omitted).

framework as it does Rule 12(b)(6) motions. *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990)). "[A] complaint must plead 'enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1960 (2007). This does not require heightened fact pleading; "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.*

Citing primarily case law addressing class certification motions, Hartford argues that Gardner has the burden of proving that the proposed class should be certified and that she has not adequately alleged the elements necessary to allow for class certification. Hartford argues at length the requirements of Rule 23 with regard to class allegations, commonly referred to as numerosity, commonality, typicality and adequacy of representation.

While not a model of clarity, the Complaint describes a "class of persons who have sought but been denied coverage by defendant for injury or death where the insured person had a blood alcohol content above the applicable state's legal limit at the time of accidental death or injury." Further, the Complaint states – albeit without much detail – as follows: this class of persons is numerous so as to make joinder of all members impracticable, difficult and inconvenient; common questions of law and fact effecting all class members predominate; the named class member's claims are typical of the class claims and concern a common course of events; the named class member will adequately represent the interests of the class; and the prosecution of separate actions would create a

9

risk of inconsistent or varying adjudications.

Gardner has plead a claim, which on its face is plausible. For example, Plaintiff might prove that Hartford is rejecting all claims for any injury caused in part by alcohol because such injuries, according to Hartford, are not accidents. While the Court will not prejudge Plaintiff's request for class certification, Plaintiff has at least put Defendants on notice of a plausible class claim. *Twombly* does not require heightened pleadings. If Hartford is confused about the parameters of the alleged class, a motion for more definite statement may be appropriate. However, normally, the parameters of the class are defined during the certification process, not at the pleading stage.[5]

## III.  Conclusion

Accordingly, it is hereby

ORDERED that Defendant Hartford's Motion for Summary Judgment [Doc. # 23] is DENIED.

Further, it is hereby

ORDERED that Defendant Hartford's Motion to Strike Class Allegations [Doc. # 25] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  September 15, 2008
Jefferson City, Missouri

---

[5] The Court understands that the breadth of the class may affect the scope of discovery. Such concerns are appropriately addressed during discovery.

11